IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
| AMELIA V. KELLY, | ) CASE NO. 12-80534-G3-7 |
| Debtor, | ) |
| JANET NORTHRUP, TRUSTEE, | ) |
| Plaintiff, | ) |
| v. | ) ADV. NO. 13-8001 |
| MATTHEW D. WIGGINS, JR., ET AL., | ) |
| Defendants. | ) |

MEMORANDUM OPINION

The court has held a trial in the above captioned adversary proceeding. The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Amelia V. Kelly ("Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on October 23, 2012. The case was converted to Chapter 7 on November 13, 2012. Janet S. Casciato Northrup ("Trustee") is the Chapter 7 Trustee.

On August 25, 2006, Debtor purchased real property located at 701 Bay Avenue, Kemah, Texas (the "Property"). Debtor executed a note payable to First Franklin, in the original principal amount of $693,750, secured by a deed of trust on the Property. (TCB Exhibit A).

On June 19, 2009, Debtor executed a deed of trust in favor of a trustee on behalf of Matthew D. Wiggins, Jr. ("Wiggins"). The deed of trust provides in part that it is to secure payment of a note executed the same date. The deed of trust directs reference to the note to determine the amount. (Wiggins Exhibit 31). The note purportedly executed by Debtor on June 19, 2009 is not in evidence.[1]

Wiggins testified that Debtor has never made any payments to Wiggins.

Wiggins testified that, beginning in June, 2009, he made the monthly payments due to First Franklin on Debtor's note payable to First Franklin. He testified that he made the payments to First Franklin until February, 2011.

On January 5, 2010, Wiggins' trustee conducted a foreclosure of Debtor's interest in the Property. Wiggins testified that he was the purchaser at the foreclosure sale.

---

[1] As noted below, the state court determined that Debtor owed Wiggins $660,000, secured by the Property, for the purchase, preservation, and improvement of the Property.

Wiggins testified that he took possession of the Property after the January 5, 2010 foreclosure sale.

On February 22, 2011, Wiggins executed a note, in the original principal amount of $1,000,000, payable to Texas Citizens Bank, N.A. ("TCB"), to refinance the Property. (TCB Exhibit C). Wiggins also executed a deed of trust with respect to the Property, in favor of TCB, securing payment of the note. (Wiggins Exhibit 34).

Wiggins testified that, after the January 5, 2010 foreclosure of Debtor's interest in the Property, he believed that he owned the Property. Wiggins testified that, in connection with the 2011 loan from TCB to Wiggins, Wiggins represented to TCB that he had good and indefeasible title to the Property.

Barry Bara, the executive vice president and chief credit officer of TCB, testified that TCB relied on Wiggins' representation that he had title to the property in making its loan of $1 million to Wiggins. He testified that TCB holding a first lien position was a condition of its making the loan to Wiggins. He testified that TCB was not aware that Debtor was claiming an interest in the property until after TCB's loan to Wiggins was closed.

Bara testified that Wiggins has made the monthly payments of $8,484.30 per month on TCB's loan to Wiggins. He

testified that the loan is current.

On February 23, 2011, Debtor filed suit against Wiggins, in the 122nd Judicial District Court of Galveston County, Texas, asserting, inter alia, that the January 5, 2010 foreclosure by Wiggins of Debtor's interest in the Property was void. (Wiggins Exhibit 37). TCB was not a party to the suit filed by Debtor against Wiggins on February 23, 2011.

The deed of trust executed by Wiggins was recorded in the real property records of Galveston County, Texas, on February 25, 2011. (Wiggins Exhibit 34).

The HUD Settlement Statement from closing of TCB's loan to Wiggins reflects that $706,212.78 of the proceeds of the TCB loan were used to pay off Debtor's loan to First Franklin. The settlement statement reflects that $235,722.56 was paid to Wiggins. (TCB Exhibit D).

Wiggins testified that the purpose of his receiving cash at the closing of the TCB loan was to get some of the money he had invested in renovations out of the Property.

On March 8, 2011, Debtor filed a notice of lis pendens in the real property records of Galveston County, Texas, indicating that Debtor had filed suit against Wiggins on February 23, 2011. (Wiggins Exhibit 37).

On February 13, 2012, the 122nd Judicial District Court of Galveston County, Texas held a trial with respect to the

wrongful foreclosure suit filed by Debtor against Wiggins.  The court entered its judgment on June 22, 2012.  The judgment provided in pertinent part that the January 5, 2010 foreclosure was void, and that:

> It is further ORDERED, ADJUDGED AND DECREED that the Subject Property is free and clear of any liens and claims of any party to this cause, subject only to (1) a lien against the Property created by this Judgment in favor of Defendant MATTHEW D. WIGGINS, JR. in the amount of $660,000.00 found by the jury for the purchase, preservation and improvement of the property, (2) any other liens of record that were otherwise valid and existing on January 5, 2010, which remain outstanding at the time of Judgment, and (3) the reimbursement rights of Defendant MATTHEW D. WIGGINS for property taxes that have been paid by MATTHEW D. WIGGINS  since the verdict was delivered in this case on February 13, 2012, which were not included in the amount found by the jury for the purchase, preservation and improvement of the property.
>
> It is further ORDERED, ADJUDGED AND DECREED that Plaintiff, AMELIA V. KELLY, shall have all such Writs and Orders as shall become, in Plaintiff's behalf, necessary to enforce the execution hereof, and to recover title and possession to the Subject Property and title in fee simple to the Property is hereby quieted in the name of Plaintiff AMELIA V. KELLY and Defendant MATTHEW D. WIGGINS is divested of all right, title and interest in the Property.

(Trustee's Exhibit 2).

Despite entry of the state court judgment, Wiggins has continued in possession of the Property.  Wiggins testified that he believes he is entitled to possession under the June 19, 2009 deed of trust, notwithstanding the entry of the state court judgment.

The parties have stipulated that, on the date of filing of Debtor's Chapter 13 petition, the Property was property of the bankruptcy estate.

Wiggins testified that there is a provision in the deed of trust that provides that, on default, the beneficiary of the deed of trust (i.e., Wiggins) can enter the premises to take exclusive control of the property. The court has reviewed the June 19, 2009 deed of trust. The paragraph to which Wiggins appears to refer provides:

> As further security for the payment of the hereinabove described indebtedness, Grantor hereby transfers, assigned, and conveys unto Beneficiary all rents issuing to or to hereafter issue from said real property, and in the event of any default in the payment of said note hereunder, Beneficiary, Beneficiary's agent or representative, is hereby authorized, at Beneficiary's option, to collect said rents, or if such property is vacant to rent the same, and collect the rents, and apply the same, less the reasonable costs and expenses of collection thereof, to the payment of said indebtedness, whether then matured or to mature in the future, and in such manner as Beneficiary shall elect. The collection of said rents by Beneficiary shall not constitute a waiver of rights to accelerate the maturity of said indebtedness nor of the right to proceed with the enforcement of this Deed of Trust.

(Wiggins Exhibit 31).

Wiggins has operated, and continues to operate, a bed and breakfast hotel, called Captain's Quarters ("CQ"), at the Property. CQ is managed by an entity controlled by Wiggins.

Wiggins testified that CQ does not earn sufficient revenue as a bed and breakfast to meet CQ's expenses (which

Wiggins believes include the payment on the TCB note, utilities, insurance, and taxes on the Property).  He testified that he is hoping the market for real property will improve.

Wiggins prepared a summary indicating the room receipts and expenses for CQ for October, 2012 through February, 2013. Wiggins' summary indicates that (excluding the payment to TCB) CQ had net profit of $134.06 for October, 2012, net loss of $1,730.94 for November, 2012, net loss of $2,305.94 for December, 2012, net profit of $1,034.06 for January, 2013, and net loss of $2,660.94 for February, 2013.  (Wiggins Exhibit 2).  Wiggins did not testify as to why the months of October, 2012 through February, 2013 were selected for his summary.

In the instant adversary proceeding, the Trustee seeks an order directing Wiggins to turn over possession of the Property to the Trustee, damages for trespass, and a declaratory judgment determining the respective rights of the parties in the Property.  Trustee also seeks an award of punitive damages against Wiggins.

Trustee testified that there are no funds in the estate.  She testified that there are no funds to pay for insurance and maintenance on the property, unless Trustee is authorized to operate the bed and breakfast.  She testified that the estate does not presently possess furniture to operate a bed and breakfast at the Property.  She testified that the furniture

presently located at the Property is owned by Wiggins.

## Conclusions of Law

In order to determine the respective rights of the parties, this court must interpret the state court judgment and the subsequent actions in light of the history of dealings between the parties.  Prior to the January 5, 2010 foreclosure, the uncontroverted evidence is that Debtor made no payments to Wiggins, and that Wiggins had taken over payments to First Franklin on a loan procured by Debtor.  Wiggins conducted a foreclosure, which the state court held to be void.

Equitable subrogation applies in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter.  Thus, a party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief.  <u>Frymire Eng'g Co. v. Jomar Int'l, Ltd.</u>, 259 S.W.3d 140 (Tex. 2008).  The court must balance the equities in view of the totality of the circumstances to determine whether a party is entitled to equitable subrogation.  <u>Murray v. Cadle Co.</u>, 257 S.W.3d 291 (Tex. App.--Dallas 2008, no writ) <u>citing</u> <u>Providence Inst. for Sav. v. Sims</u>, 441 S.W.2d 516 (Tex. 1969).

In the instant case, TCB can be considered to have involuntarily paid Debtor's debt to First Franklin.  The equities

favor equitable relief, in light of Wiggins' representation to TCB that he had title to the Property, which was a correct representation of the state of affairs on the date of the closing, though the state court ultimately determined Wiggins' foreclosure to be invalid.  TCB, by virtue of having paid off the First Franklin note, is equitably subrogated to First Franklin's position prior to the closing of the loan with respect to the Property, as to the funds advanced to First Franklin.

With respect to the funds TCB advanced to Wiggins, other than the funds paid to First Franklin, TCB's payment was voluntary, and thus not entitled to equitable subrogation.

With respect to the funds advanced to Wiggins other than those paid to First Franklin, a bona fide purchaser prevails over a holder of a prior unrecorded deed or other unrecorded interest in the same property.  A bona fide mortgagee is entitled to the same protections as a bona fide purchaser.  Noble Mortgage & Investments, LLC v. D & M Visions Investments, LLC, 340 S.W.3d 65 (Tex. App.--Houston [1st Dist.] 2011, no pet.), citing Houston First Am. Sav. v. Musick, 650 S.W.2d 764 (Tex. 1983) and Graves v. Guar. Bond State Bank, 161 S.W.2d 118  (Tex. Civ. App.--Texarkana 1942, no writ).

In the instant case, TCB advanced the funds to Wiggins in the good faith belief that he held record title to the property.  TCB did not have actual knowledge of Debtor's

contention that the foreclosure was void at the time of the closing of the sale. The real property records of Galveston County, Texas, did not reflect the filing of Debtor's suit until March 8, 2011, more than two weeks after the closing of TCB's loan to Wiggins. The court concludes that TCB has a first lien in the Property to secure the debt owed by Wiggins.

As between Wiggins and Debtor, the language of the 2012 state court judgment is unambiguous. The rights to title and possession of the property were divested from Wiggins, and awarded to Debtor. The judgment provided that the award of the property to Debtor was free and clear of any liens of parties to the state court suit. The parties to the suit included Wiggins. Wiggins' insistence that the language of the 2009 deed of trust continued to give him a right to possession of the property is without merit.

The judgment awarded Wiggins a lien to secure payment of $660,000, plus Wiggins' reimbursement rights for property taxes paid.

However, resolving the respective rights of the parties in the Property does not resolve all issues in the instant adversary proceeding. The measure of damages in a trespass case is the sum necessary to make the victim whole. When the trespass causes a temporary injury, the amount necessary to place the plaintiff in the position the plaintiff would have been in but

for the trespass generally includes the cost to repair any damage to the property, loss of use of the property, and loss of any expected profits from the use of the property.  A tenant at sufferance is generally liable only for the reasonable amount of rent as damages for the trespass.  Coinmach Corp. v. Aspenwood Apartment Corp., --- S.W.3d ----, 2013 WL 6244605 (Tex. 2013).

In the instant case, Wiggins' occupation of the property from January 5, 2010 (the date of foreclosure) to June 22, 2012 (the date of entry of the state court judgment voiding foreclosure) was as a tenant at sufferance.  Wiggins' continued occupation of the Property after entry of the state court judgment is a trespass.  For the period of January 5, 2010 through June 22, 2012, Wiggins is liable for the reasonable amount of rent.  With respect to the period from June 22, 2012 through the present, Wiggins is liable for the reasonable amount of rent, plus the loss of expected profits.  The court will hold an additional hearing to determine the both reasonable amount of rent and the amount of lost profits (including any expenditures by Wiggins to preserve the property after entry of the state court judgment).[2]

---

[2] The court notes that Wiggins' summary for the months of October, 2012 through February, 2013 shows operations near break-even, without accounting for any payment of the debt to TCB.  The court anticipates that, in preparation for the hearing on damages, Trustee will be permitted to conduct additional discovery, and that, if such discovery is met with objections, Trustee may seek an order compelling compliance, in accordance

With respect to punitive damages, exemplary damages are recoverable only when the harm results from fraud, malice, or gross negligence. Coinmach Corp. v. Aspenwood Apartment Corp., --- S.W.3d ----, 2013 WL 6244605 (Tex. 2013).

In the instant case, there is insufficient evidence of fraud, malice, or gross negligence on the part of Wiggins. Wiggins appears to have been exercising what he believed were his rights, notwithstanding that his belief was incorrect. The court concludes that there should be no award of punitive damages in the instant case.

With respect to turnover, Trustee has a right to possession of the Property, subject to the first priority lien of TCB, and the second priority judgment lien of Wiggins. However, there is an ongoing business operating at the Property, which is not property of the bankruptcy estate. There was some evidence that efforts of Wiggins to foreclose the estate's interest in the Property have been met with arguments asserting confusion with regard to the respective rights of the parties in the Property. In light of this court's having made a determination of the respective rights of the parties in the Property, the court anticipates that the parties should be able to reach a consensual resolution of the question of possession of the property, taking into consideration that the damages for Wiggins' trespass

---

with the discovery rules.

continue to accrue. If the parties are unable to reach such a consensual resolution, the court will make a determination, after the damages hearing, and likely will condition turnover of the property on the provision by Trustee of adequate protection to Wiggins and TCB.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on December 19, 2013.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE