UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| AMELIA VICTORIA KELLY | § | Case No. 12-80534 |
| | § | Chapter 7 |
| *Debtor* | § | |
| | § | Honorable Letitia Z. Paul |
| | § | |
| JANET NORTHRUP, TRUSTEE | § | |
| *Plaintiff* | § | |
| | § | |
| V. | § | Adversary No. 13-08001 |
| | § | |
| MATTHEW D. WIGGINS & TEXAS | § | |
| CITIZENS BANK, NA. | § | |
| *Defendant(s)* | § | |

## MATTHEW D. WIGGINS REQUEST FOR ADEQUATE PROTECTION PAYMENTS AND BENCH BRIEF ON CONDITIONS OF TURNOVER OF PROPERTY TO PLAINTIFF AND AWARD OF ATTORNEYS FEES

COMES NOW, MATTHEW D. WIGGINS, and files this Request for Adequate Protection Payments, Bench Brief on Conditions of Turnover of Property to the Plaintiff and Brief on Award of Attorneys fees in this action, and would respectfully show as follows.

### RELEVANT BACKGROUND

1. Trial was conducted on November 21, 2013. On December 19, 2013, this Court entered a Memorandum Opinion and entered certain findings of fact and conclusions of law. The Court found, among other things, that Texas Citizens Bank has valid and existing first priority lien on the real property located at 701 Bay Avenue, Kemah, Texas (the "Property"), and Matthew D. Wiggins has a valid second priority lien on the Property, and that all of the personal property inside the Property belonged to Wiggins. In addition, the Court found that the trustee has a right of possession of the Property and that Wiggins is liable to the estate for trespass. A judgment conforming to the Court's findings was then entered by the Court. The judgment

provides that on February 4, 2014, the Court will conduct a hearing to determine the amount of damages for trespass (including addressing any amounts expended by Wiggins to preserve the Property), and to determine conditions for turnover of the Property to the Trustee.

2.      Shortly after entry of the Judgment, the parties meet to discuss turnover of the Property to the Trustee.[1]  Wiggins tendered the key to the Property to the Trustee within a few days of December 19, 2013 by making it available for pick-up at a business location a few blocks from the Property.  All reservations for Captains Quarters (the bed and breakfast operating at the Property) occurring after January 4, 2014 were cancelled and Captains Quarters was closed on January 4, 2014. Wiggins subsequently purchased a shipping container and it was delivered to the Property on or about January 10, 2014.  Substantially all of the personal property was loaded into the shipping container.  However, a relatively small amount of personal property remains inside the Property because the first shipping container was completely full and a second container had to be ordered and delivered to the Property, which occurred within the past several days.

3.      A key to Property was physically delivered to Trustee's counsel on January 13, 2014.  The Trustee has represented to Wiggins that she intends to abandon the Property (with the averment that the Debtor would then be entitled to possession of the Property).  Wiggins offered pay the Trustee $5,000 to abandon the Property to him rather than the Trustee receiving nothing for the Property.  The Trustee rejected the offer arguing that $5,000 is a nominal amount.

4.      The Trustee has represented that she does not have sufficient funds to insure the Property, pay the property taxes, or provide adequate protection payments to Texas Citizens Bank or Wiggins.  Thus, Wiggins: (i) continues to pay for property and flood insurance; (ii)

---

[1] Due to the Christmas and New Year holiday, travel schedules and holiday commitments, the parties meet as soon as possible.

861021/00005/00073124.DOCX 1

Wiggins paid the 2013 ad valorem property taxes in the amount of $19,916.20 on January 27, 2014, and (iii) Wiggins has continued to pay the monthly payment on the first lien note to Texas Citizen Bank ("TCB").

5.  On January 31, 2014, the Trustee (for the first time) produced a Comparative Market Analysis prepared by real estate broker stating that the property should be listed for sale at $757,450.  The Comparative Market Analysis was dated February 9, 2013.

6.  It is undisputed that Wiggins has a valid secured lien on the Property pursuant to the terms of the state court judgment in the pre-petition amount of $722,331.12.  Pursuant to this Court's judgment, TCB has a valid first lien on the Property in the amount of at least $706,212.78.

## RELIEF SOUGHT AND RELEVANT ISSUES

7.  Turnover.  As identified by the Court's judgment, turnover of the Property to the Trustee should be conditioned on reasonable assurances that the trustee can provide the lien holders adequate protection.  The Property has been constructively turned over to the Trustee.  Pursuant to 11 U.S.C. § 363(e), Wiggins requests that the Court prohibit or condition the Trustee's use, sale or lease of the Property by ordering the Trustee to provide Wiggins adequate protection.  If the Trustee cannot (or will not) offer Wiggins adequate protection, the Court should order the Property abandoned to Wiggins.

8.  Attorneys Fees.  Upon information and belief, the Trustee will assert at the hearing on February 4, 2014 that she is entitled to an award of attorneys fees against Wiggins.  The judgment is silent as to an award of attorneys fees and any claim for attorneys against Wiggins must be denied.

**ARGUMENT AND AUTHORITY**

9. <u>Turnover.</u> Turnover actions are predicated on a trustee's proposed use, lease, or sale of the property under 11 U.S.C. §363, which in turn requires adequate protection as identified in 11 U.S.C. § 361. The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession. *United States v. Whiting Pools*, 462 U.S. 198, 207 (U.S. 1983). In this case, the Trustee has admitted that she cannot provide the lien holders adequate protection payments.

10. In order to prevail on an action for turnover, the Trustee must prove by a preponderance of the evidence[2] that the Property is property of the estate, that the property is of the type that the Trustee can use, sell or lease, and the Property is not of inconsequential value or benefit of the estate. 11 U.S.C. §542(a).

11. There is no dispute that the Property is property of the estate. However, turnover should be denied for several reasons. First, during trial the Trustee admitted that she does not have the ability (or resources) to operate a business at the Property. There is no evidence that the Trustee can lease the Property and the Trustee's recently produced expert report clearly provides that there is no equity in the Property. Because the Trustee cannot meet her burden of proof that she can use, sell or lease the Property, turnover is not appropriate.

12. Second, because there is no equity in the Property, the Property provides no benefit or value to the estate and it should not be subject to turnover. *See* 11 U.S.C. § 542(a). Next, the Trustee cannot provide adequate protection to the lien holders. Turnover would simply result in the Trustee paying the lien holders all of the funds generated by the Property.

---

[2] *In re Crescent Res., LLC*, 457 B.R. 506, 513 (Bankr. W.D. Tex. 2011).

13. The Bankruptcy Court's holding in *Rushton v. Bank of Utah (In re C.W. Mining Co.)*, 465 B.R. 226, 242 (Bankr. D. Utah 2011) is instructive to the facts of this case. In *Rushton*, a bank held a CD in the amount of $389,099 as collateral for a loan. The court held that if were to order the bank to turn over the CD or its value to the Chapter 7 trustee, the bank would be entitled to adequate protection to ensure payment of $383,099. This result under § 542(a) would be that the bank would be entitled to receive payment from the estate in an amount equal to the value of the CD. The court held that the fact that the bank would be entitled to receive exactly what it would be forced to turn over renders turnover pointless and granting judgment to the Chapter 7 trustee under § 542(a) would be meaningless.

14. The same reasoning the *Rushton* court used applies in this case. The undisputed first and second liens on the Property total at least $1,428,543.90. If this Court enters a final order for Wiggins to turnover the Property to the Trustee, the Trustee would have to pay Wiggins (and Texas Citizens) adequate assurance protection payments and ultimately pay the lien holders claims in full. The Trustee has admitted she cannot operate the Property as a bed and breakfast, there is no equity in the Property, and the Trustee has no ability to make adequate protection payments. Accordingly, turnover to the Trustee is simply a waste of judicial resources and provides no benefit to the estate.

15. For illustrative purposes, a summary of proposed sale of the Property would render the following results:

| | |
|---|---|
| Sale Price: | $757,450 |
| 6% Real Estate Commission: | ($ 45,447) |
| Closing costs | ($ 2,500) |
| Admin claim for taxes paid[3] | ($ 39,694) |
| First lien holder | ($669,809) |
| **Deficiency Claims** | **$809,972** |

---

[3] Since the bankruptcy filing, Wiggins paid two years of post-petition ad-valorem taxes totaling $39,694.83

861021/00005/00073124.DOCX 1

16. The Property clearly has no value to the estate and thus a final turnover order is inappropriate. Moreover, in February 2013 the Trustee obtained the "expert" opinion that the Property was worth $757,450. The Trustee knew in February 2013 that Wiggins had a valid lien on the Property in the amount of $722,331(as of the petition date). Clearly, there is no equity in the Property and a sale provides no benefit or value to the estate. Instead, the Trustee continues to maliciously prosecute the lawsuit in bad faith in an attempt to extort a large settlement from Wiggins. The Trustee's prosecution of the lawsuit was waste of judicial and estate resources and has caused Wiggins to incur a substantial amount of damages. Accordingly, the Court should issue an order authorizing Wiggins to continue to possess and use the Property.

17. **Attorneys Fees.** The Trustee is not entitled to an award of attorneys fees against Mr. Wiggins. Federal courts follow the American Rule in the absence of a fee shifting statute. *Utica Lloyd's v. Mitchell*, 138 F.3d 208 (5th Cir. 1998). The American Rule requires that without explicit Congressional authorization, attorney's fees are not a recoverable cost of litigation. *Self-Insurance Inst. Of Am. v. Korioth*, 53 F.3d., 694, 696 (5th. Cir. 1995). The Federal Declaratory Judgment Act does not provide statutory authority to award attorneys fees. *Id*.

18. To the extent the Chapter 7 trustee asserts she is entitled to an award of attorneys fees under the Texas Act (Texas DJA), her claim is should also be denied. The Texas DJA is merely a procedural mechanism for resolving disputes and is not substantive law. *Utica* at 210. The Texas DJA is inapplicable when jurisdiction is based upon a federal question. *Self-Insurance Inst. Of Am. v. Korioth*, 53 F.3d., 694, 697 (5th. Cir. 1995). In this case, jurisdiction is based upon 28 U.S.C. 1334 (federal question jurisdiction) (See Plaintiff's Original Complaint, ¶ 1). Fees are only recoverable where "controlling substantive law" permits recovery. Thus,

because jurisdiction in this case is based upon a federal question, the Chapter 7 trustee cannot recover her attorneys fees under the Texas DJA.

19. In the alternative, even if the Texas DJA was controlling substantive law (which the 5th Circuit has specifically stated it is not), the Plaintiff would not be entitled to an award of attorneys fees. On January 13, 2014, the Plaintiff stated on the record in open court that the primary purpose of the litigation was to get an order declaring that the "banks" (Texas Citizens Bank) lien was invalid and that the Plaintiff accepts that she lost at trial on that issue. (See hearing transcript at 5:14 - 6:20). Because the Plaintiff was the not the prevailing party, an award of attorneys' fees would be inappropriate.

20. Furthermore, the Trustee's claim for trespass under Texas state law does not provide for an award of attorneys fees. *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 57 Tex. Sup. J. 77, *42-44 (Tex. 2013) (stating that when the trespass-to-try-title statute governs the parties' substantive claims, the plaintiff may not proceed alternatively under the Texas Uniform Declaratory Judgments Act to recover their attorney's fees. The Texas Legislature provided the trespass-to-try-title statute as the method of determining title to real property, and the Legislature did not provide for attorney's fees in such actions). Accordingly, any claim of the Trustee for an award of attorneys fees should be denied.

WHEREFORE, PREMISES CONSIDERED, Matthew D. Wiggins, respectfully requests that the Court issue an order providing as follows:

    a) condition turnover of the Property to the Trustee on payment of adequate protection payments to Matthew Wiggins;

b) to the extent that the Trustee is unwilling or unable to pay Wiggins adequate protection payments, issue an order that Wiggins is entitled to use and possess the Property;

c) deny any further relief requested by the Plaintiff, and award Matthew D. Wiggins all further relief that he may be entitled to in law or equity.

Dated: February 3, 2014

Respectfully submitted,

HOOVER SLOVACEK LLP

By: __/s/_T. Josh Judd_____
T. JOSH JUDD
State Bar No. 24036866
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: (713) 977-8686
Facsimile: (713) 977-5395

ATTORNEYS FOR MATTHEW D. WIGGINS

## CERTIFICATE OF SERVICE

On February 3, 2014, I hereby certify that a true and correct copy of the foregoing has been served via electronic mail and/or by first class regular mail, postage prepaid, as indicated below.

(1) **Counsel for the Plaintiff**
*Via Electronic Transmission by the Clerk of the Court*
Johnie J. Patterson on behalf of the Plaintiff
jjp@walkerandpatterson.com

/s/T. Josh Judd_____
T. Josh Judd

861021/00005/00073124.DOCX 1