

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| IN RE | ) |
| AMELIA V. KELLY, | ) CASE NO. 12-80534-G3-7 |
| Debtor, | ) |
| JANET NORTHRUP, TRUSTEE, | ) |
| Plaintiff, | ) |
| v. | ) ADV. NO. 13-8001 |
| MATTHEW D. WIGGINS, JR., ET AL., | ) |
| Defendants. | ) |

MEMORANDUM OPINION

The court previously held a trial in the above captioned adversary proceeding, and entered an interlocutory judgment which, <u>inter alia</u>, set an additional hearing to determine the amount of damages. The court has held a hearing on the amount of damages. The following are Findings of Fact and Conclusions of Law of the court, supplementing the Findings of Fact and Conclusions of Law set forth in this court's Memorandum Opinion entered on December 19, 2013 (Docket No. 46). A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Amelia V. Kelly ("Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on October 23, 2012. The case was converted to Chapter 7 on November 13, 2012. Janet S. Casciato Northrup ("Trustee") is the Chapter 7 Trustee.

As set forth in greater detail in this court's Memorandum Opinion entered on December 19, 2013 (Docket No. 46), during 2006, prior to the Chapter 7 petition date, Debtor purchased property located at 701 Bay, Kemah, Texas, with financing from First Franklin. Matthew D. Wiggins Jr. foreclosed on Debtor's interest in the property on January 5, 2010, and took possession of the property. An entity affiliated with Wiggins operated a bed and breakfast hotel called Captain's Quarters at the property. On February 22, 2011, Wiggins refinanced the First Franklin note, secured by the property, with Texas Citizens Bank, N.A. ("TCB"). On February 23, 2011, Debtor sued Wiggins in state court, asserting that Wiggins' foreclosure was wrongful. On February 13, 2012, the state court held that the foreclosure was void, and that Debtor's interest in the property was subject to a lien in favor of Wiggins to secure a $660,000 debt.

Wiggins remained in possession of the property, and Trustee filed the instant adversary proceeding, seeking turnover of the property, a declaration as to the respective rights of the parties, damages for trespass, and punitive damages.

In this court's Memorandum Opinion and Judgment (Docket Nos. 46, 47) entered after the trial of the instant adversary proceeding, this court held that the bankruptcy estate owns the property, subject to the first priority lien of TCB, and the second priority judgment lien of Wiggins. This court held that Wiggins is liable to the estate in damages consisting of a reasonable rent for the period of January 5, 2010 through June 22, 2012, and is liable to the estate in damages consisting of a reasonable rent plus the loss of expected profits for the period of June 22, 2012 through the present. The Judgment set an additional hearing to determine the amount of damages.

At the hearing on the amount of damages, counsel for Plaintiff announced that Plaintiff is not seeking recovery for loss of expected profits. Thus, the only issue left to determine is a reasonable rent.

At the hearing on the amount of damages, which was held on February 4, 2014, Wiggins testified[1] that he vacated the property one day before the hearing. He testified that he has turned over the key to the property to Trustee.[2]

---

[1] All further references to testimony in this Memorandum Opinion refer to testimony at the hearing on the amount of damages, unless identified otherwise.

[2] Trustee has since abandoned the bankruptcy estate's interest in the property, with the agreement of all parties.

3

Wiggins testified that he believes a fair market rental value for the property is $3,000 to $4,000 per month.

Wiggins asserts that he is entitled to an offset against the rental rate for the costs of insurance and taxes, and also for the payments he made on the First Franklin and TCB notes. He testified that he paid approximately $20,582 for 2012 property taxes, and $19,916 for 2013 property taxes. He testified that he paid approximately $6,000 in each of 2012 and 2013 to insure the property. He testified that he made thirteen monthly payments of $5,300 per month on the First Franklin note. He testified that he made twelve "interest only" monthly payments totaling $43,000 on the TCB note, and subsequently made monthly payments of $8,400 per month on the TCB note. He testified that he attributes $137,000 of the payments on the TCB note to the First Franklin note.

Wiggins testified that the property, when it was operated as a bed and breakfast, had six rooms offered for rental. He testified that the rental rate for the large rooms was $95 per night. He testified that the rental rate for the small rooms was $65 per night. He testified that the entire house was offered at $1,100 per night on the weekends, and a lesser amount during the week. He testified that the bed and breakfast almost never was able to rent the whole house.

4

Plaintiff impliedly asserts that the reasonable rental rate for the property is $1,100 per day.

The court finds that a reasonable rental rate for the property during the period from January 5, 2010 through February 3, 2014 is $4,000 per month.

## Conclusions of Law

The measure of damages in a trespass case is the sum necessary to make the victim whole, no more, no less. <u>Coinmach Corp. v. Aspenwood Apartment Corp.</u>, 417 S.W.3d 909 (Tex. 2013), citing <u>Meridien Hotels, Inc. v. LHO Financing Partnership I, L.P.</u>, 255 S.W.3d 807 (Tex. App.--Dallas 2008, no pet.).

As this court stated in its Memorandum Opinion entered on December 19, 2013 (Docket No. 46), when the trespass causes a temporary injury, the amount necessary to place the plaintiff in the position the plaintiff would have been in but for the trespass generally includes the cost to repair any damage to the property, loss of use of the property, and loss of any expected profits from the use of the property. A tenant at sufferance is generally liable only for the reasonable amount of rent as damages for the trespass. <u>Coinmach Corp. v. Aspenwood Apartment Corp.</u>, 417 S.W.3d 909 (Tex. 2013).

Trustee is no longer seeking a recovery for loss of profits. Thus the measure of damages is the reasonable rental rate of the property. Wiggins occupied the property for 49 months. Multiplying that by the reasonable rental rate of $4,000 per month, Wiggins is liable to the estate for $196,000.

With respect to the payments for taxes, the property would have incurred ad valorem property taxes, whether or not Debtor or Trustee was in possession of the property. Thus the sum necessary to make Plaintiff whole is subject to a setoff for the amount of taxes paid.

With respect to insurance, Wiggins admitted in his testimony that the insurance policy procured by Wiggins was primarily for Wiggins' benefit. As such, the amount necessary to make Plaintiff whole does not require setoff of the amount paid for insurance.[3]

Wiggins cites no authority for the theory that he is entitled to setoff his expenses for payment of notes while he was in possession of the property. This court has located no such authority. The court concludes that Wiggins is liable to the estate for $155,502, representing the reasonable rental total of $196,000, less the taxes paid of $40,498. This is without

---

[3]This is without prejudice to a request for allowance of the cost of insurance as an administrative expense of the bankruptcy estate. The court does not determine at this time whether such an administrative expense would be allowed.

prejudice to any right which Wiggins may have to foreclose Debtor's interest in the property.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on this _____ day of _____, 2014.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE